UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TAYRRIA L. COOKS-SANDERS,

                           Plaintiff,

19-CV-264-MJR
DECISION AND ORDER

-v-

ANDREW SAUL,
Commissioner of Social Security,

                           Defendant.

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 14).

Plaintiff Tayrria L. Cooks-Sanders brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security finding her ineligible for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 7) is granted, the Commissioner's motion (Dkt. No. 12) is denied, and the case is remanded.

## BACKGROUND[1]

Plaintiff protectively filed an application for SSI on June 1, 2015, alleging a disability as of June 1, 2014, due to hypertension, depression, anxiety, mood swings, and being sad and acting out. (Tr. 13, 161-172, 196).[2] Her claim was initially denied on July

---

[1] The Court assumes the parties' familiarity with the record in this case.
[2] References to "Tr." are to the administrative record in this case.

16, 2015. (Tr. 65). On July 24, 2015, Plaintiff filed a timely written request for a hearing. (Tr. 86).

On October 13, 2017, a video hearing was conducted by Administrative Law Judge ("ALJ") Lisa B. Martin. (Tr. 28-58). The ALJ appeared in Falls Church, Virginia, while Plaintiff, along with her attorney, appeared in Buffalo, New York. A vocational expert also appeared.

On March 27, 2018, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 10-27). That decision became final when on January 8, 2019, the Appeals Council denied her request for review. (Tr. 1-6). This action followed.

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in

Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Plaintiff has not engaged in substantial activity since June 1, 2015, the application date. (Tr. 15). At step two, the ALJ concluded that Plaintiff has the following severe impairments: depression with bipolar disorder; anxiety with panic attacks; and marijuana dependency disorder. (Tr. 15-16). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 16-18). Before proceeding to step four, the ALJ assessed Plaintiff's RFC, in pertinent part, as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations. The claimant needs to avoid all climbing of ladders, ropes, or scaffolds, all exposure to crowded setting (as defined at hearing), all exposure to dangerous work hazards (unprotected heights and exposure to moving machinery), and all exposure to extreme heat and humidity conditions. The claimant is limited to detailed, but not complex, work tasks not requiring a fast assembly line quota pace (as defined at hearing). She is limited to occasional work interactions with coworkers and supervision, but not involving any public contact work. The claimant will be off up to three percent of the workday due to symptom exacerbations.

(Tr. 18). Proceeding to step four, the ALJ found that Plaintiff is unable to perform past relevant work. (Tr. 21). At step five, the ALJ found that, considering Plaintiff's age,

education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, such as Stores Laborer and Cleaner. (Tr. 22-23). Accordingly, the ALJ concluded that Plaintiff is not disabled under the Act. (Tr. 23).

## IV.   Plaintiff's Challenge

Plaintiff argues, *inter alia*, that the ALJ erred by making her mental RFC determination without medical opinion evidence and instead relied on her own lay opinion. Therefore, Plaintiff argues, the ALJ's RFC determination is not supported by substantial evidence and the case must be remanded. The Court agrees.

An RFC assessment "is the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545. An ALJ must assess the claimant's RFC by using "all the relevant evidence in [the] case record." *Id.* However, there must be "substantial medical evidence to support [her] opinion." *Salone v. Berryhill*, No. 6:16-CV-06491-MAT, 2018 WL 6333421, at *2 (W.D.N.Y. Dec. 5, 2018) (quoting *Goldthrite v. Astrue*, 535 F.Supp.2d. 329, 339 (W.D.N.Y. 2008) (remanding when RFC finding not supported by substantial evidence). An ALJ is not qualified to rely on only "raw medical data" to determine Plaintiff's limitations or to craft an RFC. *Henderson v. Berryhill*, 312 F. Supp. 3d 364, 371 (W.D.N.Y. 2018) (holding ALJ was not permitted to rely on treatment notes to craft an RFC after rejecting medical opinions). Rather, an ALJ should rely on medical opinion evidence, based on that raw data, to address the claimant's "functional or work capacity limitations." *Jermyn v. Colvin*, No. 13-CV-5093 (MKB), 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) (remanding when ALJ relied on record with no expression of functional limitations); see *Perkins v. Berryhill*, No. 17-CV-6327-FPG, 2018 WL 3372964,

at *4 (W.D.N.Y. July 11, 2018) (citing *Ford v. Colvin*, No. 12-CV-301A, 2013 WL 4718615, at *8 (W.D.N.Y. Sept. 3, 2013) (remanding where ALJ did not explain how Plaintiff's treatment evidence supported his RFC findings).

"Where the record is 'devoid of any opinions from ... medical sources regarding [the] Plaintiff's functional or work capacity limitations, ... the ALJ [is] obligated to develop the record and obtain RFC assessments[.]'" *Salone*, 2018 WL 6333421, at *2 (quoting *Jermyn*, 2015 WL 1298997, at *19). Failure to do so requires remand. *Id.*; see *Evans v. Berryhill*, No. 16-CV-801 (MAT), 2018 WL 1377122, at *3 (W.D.N.Y. Mar. 19, 2018) (citing *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *4 (N.D.N.Y. July 8, 2014)) (remanding when ALJ relied on lay interpretation of medical records leaving a gap regarding functional limitations). "The ALJ's duty to develop the record and resolve ambiguities is enhanced where . . . the plaintiff suffers from a psychiatric impairment." *Leutung v. Comm'r of Soc. Sec.*, 2019 WL 1385847, at *2 (W.D.N.Y. Mar. 27, 2019) (citing *Lacava v. Astrue*, 2012 WL 6621731, at *11 (S.D.N.Y. Nov. 27, 2012)).

Here, the ALJ did not rely on any medical opinion evidence in determining Plaintiff's mental RFC as there was no such evidence in the record. Instead, the ALJ merely summarized Plaintiff's treatment notes and activities without tethering that evidence to the specific abilities and limitations contained in the RFC finding. In other words, the ALJ relied on her own lay opinion of the medical records to determine Plaintiff's mental RFC instead of obtaining a medical opinion from a qualified medical source. This is particularly problematic because the ALJ found at step two of her analysis that Plaintiff has severe mental impairments, including depression with bipolar disorder and anxiety with panic attacks. (Tr. 15). While there are some cases where an ALJ may use "common

sense" to determine the limitations in an RFC determination, she may not do so where there are severe mental impairments. See *Jones v. Colvin*, No. 14-CV-556S, 2015 WL 5126151, at *4 (W.D.N.Y. Sept. 1, 2015) ("Here, because the ALJ concluded that Plaintiff's depression was significant enough to constitute a severe impairment, his subsequent failure to obtain a medical assessment of the extent of that impairment from either a treating or consultative examiner quantifying Plaintiff's mental limitations rendered the record incomplete."). While ALJs have leeway to make "common sense judgments," this "does not typically extend to the determination of mental limitations, which are by their very nature 'highly complex and individualized.'" *Dye v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 386, 392-93 (W.D.N.Y. 2019) (remanding where ALJ made RFC determination without opinion evidence, because mental impairments are "by their very nature highly complex and individualized"); see also *Lilley v. Berryhill*, 307 F.Supp.3d 157, 161 (W.D.N.Y. 2018) (quoting *Nasci v. Colvin*, No. 6:15-CV-0947(GTS), 2017 WL 902135, at *26 (N.D.N.Y. Mar. 7, 2017)) (remanding, finding that without opinion evidence with respect to mental impairments, the ALJ did not satisfy duty to complete the record); *Deshotel v. Berryhill*, 313 F. Supp. 3d 432, 435 (W.D.N.Y. 2018) (remanding, holding that ALJ may not make common sense judgments with regard to mental limitations as they are "highly complex and individualized.").

As there were no medical opinions assessing Plaintiff's mental limitations, the ALJ should have taken steps to obtain such evidence. Without a medical opinion, the ALJ left a gap in the record requiring further development. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (rejecting medical opinion left gaps in the record triggering duty to develop the record). "As a general rule, where the transcript contains only diagnostic evidence

and no opinion from a medical source about functional limitations ..., to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Nanartowich v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-6096P, 2018 WL 2227862, at *11–12 (W.D.N.Y. May 16, 2018) (quoting *Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014)). Here, the ALJ should have obtained an opinion assessing Plaintiff's mental limitations. Failure to do so, requires remand.[3]

## CONCLUSION

For the reasons stated, Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is denied, and this case is remanded for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      June 8, 2020
                Buffalo, New York

                                          MICHAEL J. ROEMER
                                          United States Magistrate Judge

---

[3] Because the case is being remanded anyway, the Court will not address Plaintiff's other arguments: (1) that the ALJ's physical RFC is unsupported by substantial evidence; and (2) that the ALJ's consistency finding is unsupported by substantial evidence. However, the Commissioner should address these issues on remand.